James M. Harrington
 (pro hac vice application pending)
 jharrington@harringtonlawpc.com
HARRINGTON LAW, P.C.
5960 Fairview Road, Suite 400
Charlotte, NC 28210-3119
Tel.: (704) 315-5800 / Fax: (704) 625-9259
*Attorney for Plaintiff*
SLEP-TONE ENTERTAINMENT CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Slep-Tone Entertainment Corporation,<br><br>Plaintiff,<br><br>v.<br><br>U.R. Entertainment, Inc. and John Does Nos. 1-30,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

The Plaintiff, Slep-Tone Entertainment Corporation ("Slep-Tone"), by its undersigned counsel, hereby complains of the Defendants, and for its complaint alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for trademark infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

2. This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to the Plaintiff's Lanham Act unfair competition claim, pursuant to 28 U.S.C. §

1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because all of the defendants reside in this State and judicial district.

4. This Court has personal jurisdiction over each of the Defendants, in that each of them resides in this State and judicial district and conducts significant business here, and in that the acts of which the Defendants stand accused were undertaken in this State and judicial district.

## THE PLAINTIFF

5. Plaintiff Slep-Tone is a North Carolina corporation having its principal place of business in Charlotte, North Carolina.

## THE DEFENDANTS

6. Defendant U.R. Entertainment, Inc. ("UR") is an Arizona corporation that operates a commercial karaoke business under its own name.

7. The pseudonymously named defendants, John Does numbered 1 through 30 inclusive ("Doe Defendants") are bars, restaurants, and other such establishments who hired UR to provide commercial karaoke services at their places of business as entertainment for their patrons, knowing that in the course of doing so, UR was committing acts of trademark infringement.

## BACKGROUND FACTS

8. Slep-Tone is the manufacturer and distributor of karaoke accompaniment tracks sold under the trademark SOUND CHOICE.

9. Slep-Tone is recognized as a leading producer of high-quality karaoke accompaniment tracks and has invested more than $18 million to re-record and replicate the authentic sound of approximately 18,000 popular songs across different eras and genres of music.

HARRINGTON LAW, P.C.
5960 Fairview Road, Suite 400
Charlotte, North Carolina 28210-3119
704-315-5800 | fax 704-625-9259

10. Slep-Tone's dedication to producing music of the highest quality and the most authentic character led to its SOUND CHOICE label being the most recognizable and sought-after in the industry.

11. Throughout its history, Slep-Tone has released its products for commercial use exclusively on physical media—initially, cassette tapes, then compact discs beginning in approximately 1994.

12. Originally, Slep-Tone's compact discs contained karaoke tracks encoded in a special format known as "CD+G," or "compact disc [audio] plus graphics," that allows for synchronized playback of audio and video suitable for prompting singers with lyrics cues.

13. CD+G discs required special players that were capable of decoding the CD+G format.

14. More recently, computer technology that allows the karaoke tracks stored on compact discs in CD+G format to be decoded and "ripped" (copied) to a computer hard drive has arisen and become widely available.

15. Copies of karaoke tracks stored on media other than the original compact discs are referred to as "media-shifted copies" because they have been duplicated from the original media and written to non-original media.

16. Media-shifting also frequently involves format-shifting, the conversion from the original format (such as CD+G) to another format (such as MP3+G or WAV+G).

17. As the price of computer hard drives of ever-larger size has fallen, professional users now have the technical ability to store a large number of karaoke accompaniment tracks on hard drives for convenient transport to their karaoke shows, without also carrying large numbers of compact discs.

18. As a result, most professional karaoke operators have shifted to the use of ripped karaoke tracks stored on computer media such as hard drives as a matter of convenience.

19. However, the same technology is capable of being used not only for convenience but also to allow—on a technical level—the operator to use more music than he or she has paid for and, in some cases, to avoid paying for music at all.

20. Karaoke operators have used the available technology to copy one purchased disc to two or more computer systems for simultaneous use; to copy their patrons' discs to the operator's computer hard drive at a show; to "swap" song files with other operators; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with copies of karaoke tracks; and to sell off their original media in the secondary market once they have ripped those media to a hard drive.

21. The foregoing activities nearly drove Slep-Tone out of business because it became relatively easy to obtain, free or at a nominal cost, illicit copies of products that would cost tens of thousands of dollars if purchased at retail.

22. Historically, Slep-Tone opposed the shifting of SOUND CHOICE karaoke tracks to alternative media, warning purchasers of CD+G discs that unauthorized copying was a violation of applicable laws.

23. More recently, however, Slep-Tone established a media-shifting policy ("MSP") that imposes mandatory rules for karaoke operators who use media-shifted copies of SOUND CHOICE karaoke tracks to provide commercial karaoke services.

24. Briefly stated, the MSP requires compliance with four conditions: (a) 1:1 ("one-to-one") correspondence, meaning that for every media-shifted SOUND CHOICE karaoke track on a given medium such as a computer hard drive, the operator owns and maintains possession of a lawful original SOUND CHOICE karaoke track on its original medium, on a one-copy-for-one-original basis; (b) that the original media that form the basis for 1:1 correspondence are placed "on the shelf," i.e., not used for any purpose at all; (c) that the operator notify Slep-Tone

1  that he or she has media-shifted karaoke tracks; and (d) that the operator submit to
2  and be certified as having passed an audit of the operator's systems to verify
3  complete compliance with the MSP.

4      25.    The basis of Slep-Tone's authority to require compliance with the
5  MSP is its right to control the commercial use of its federally registered trademarks
6  and, as to some tracks, its ownership of copyright in the synchronized audiovisual
7  words represented by and in the sound recordings associated with those tracks.

8      26.    If an operator complies with <u>all four</u> conditions of the MSP, then that
9  operator is granted permission from Slep-Tone, co-extensive only with Slep-Tone's
10 rights in the subject matter, to use the media-shifted copies to provide commercial
11 karaoke services.

12     27.    If an operator fails to comply with <u>any</u> of the conditions of the MSP,
13 then none of the media-shifting the operator has conducted is permitted, authorized,
14 or tolerated by Slep-Tone.

15
16 **THE RIGHTS OF THE PLAINTIFF**

17     28.    Plaintiff Slep-Tone is the owner of U.S. Trademark Registrations No.
18 1,923,448 and No. 4,099,045, both for the trademark SOUND CHOICE.

19     29.    Plaintiff Slep-Tone is also the owner of U.S. Trademark Registrations
20 No. 2,000,725 and No. 4,099,052, both for a display trademark as follows:



25     30.    Slep-Tone has, for the entire time its marks ("the Sound Choice
26 Marks") have been federally registered, provided the public, including the
27 Defendants, with notice of those federal registrations through the consistent display
28 of the symbol ® with its marks as used.

- 5 -
**COMPLAINT**

31. Principally, the Sound Choice Marks are indicators of Slep-Tone as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by Slep-Tone or at its direction and under its control.

## ACTIVITIES OF UR

32. UR provides karaoke services to various venues in Arizona, principally concentrated in the Phoenix metropolitan area.

33. UR provides commercial karaoke services to multiple venues simultaneously using employees or contractors to whom UR has supplied equipment and content.

34. In order to provide services, rather than using original karaoke discs that it possesses (if it indeed possesses such discs), UR relies upon one or more computer hard drives that store files representing karaoke accompaniment tracks.

35. UR created, or directed another to create, or otherwise acquired from a third party the files that are stored on its computer hard drives.

36. UR does not maintain a 1:1 correspondence relationship between its hard drive(s) and original discs it has lawfully acquired.

37. Slep-Tone did not authorize, cause, control, or know about the creation of the files stored on UR's computer hard drives at the time those files were so stored.

38. Rather, the files were created by or at the behest of UR, or by a third party unknown to Slep-Tone. The party who created the files is the "origin" of the files for purposes of the Trademark Act.

39. Many of the files stored on UR's computer hard drive(s) are representative of karaoke tracks originally created by Slep-Tone and are marked with the Sound Choice Marks.

40. When played as intended using appropriate software, those files cause

the Sound Choice Marks—and other trade dress associated exclusively with Slep-Tone—to be displayed as part of the associated video component of the karaoke tracks they represent.

41. Slep-Tone did not authorize UR to create or use karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks.

42. As such, the placement of the Sound Choice Marks upon UR's self-created computer files is a false designation of the origin of those computer files.

43. UR has, at all times relevant to the causes of action stated herein, known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks by or for it is not authorized.

44. UR's files, which function as karaoke accompaniment tracks, are also counterfeits of genuine SOUND CHOICE-branded tracks.

45. A patron or unwitting customer of UR, when confronted with the display of the Sound Choice Marks at one of its shows, is likely to be confused into believing, falsely, that Slep-Tone created the tracks in use or authorized their creation.

46. UR's use of the computer files representative of karaoke accompaniment tracks is commercial in nature because it is paid to provide access to and play those computer files and tracks at karaoke shows.

47. Additionally, even if a particular counterfeit track is not played at a given show, the act of making that track available for play at a show is a commercial act for which UR is compensated and which inures to its benefit.

48. UR's piracy of accompaniment tracks is not limited to Slep-Tone's tracks, but extends to the piracy of numerous other manufacturers' tracks as well, on the same terms as above.

///

## ACTIVITIES OF THE DOE DEFENDANTS

49. The Doe Defendants are various individuals or business entities that have hired UR to provide commercial karaoke services at their establishments, which are principally restaurants and bars.

50. The identities of the Doe Defendants are known to the Plaintiff.

51. The Doe Defendants are named pseudonymously as placeholders because the Plaintiff is presently engaged in a series of identification, notification, negotiation, and verification activities that are likely to result in the resolution of claims against one or more of the Doe Defendants.

52. The Plaintiff's ability to enter into those resolutions will be significantly impaired if the Doe Defendants are publicly identified at this time.

53. The Plaintiff intends to limit its attempts at pre-naming resolution of its claims to a short period following the filing of this Amended Complaint, at which point it will seek leave of the Court to substitute the real parties in interest for each Doe Defendant, the claims against which the Plaintiff has been unable to resolve.

54. The Doe Defendants have engaged UR to provide karaoke services at their establishments, or retained UR as a provider at their establishments, having been notified and therefore knowing that UR is engaged in trademark infringement and unfair competition while providing those services.

55. The Doe Defendants each have the ability to control whether or not UR engages in trademark infringement and unfair competition when providing karaoke services at their establishments.

56. The Doe Defendants have received a financial benefit from the provision of infringing karaoke services at their establishments by UR, through the attraction of paying patrons to their establishments.

57. As such, each of the Doe Defendants is operating in actual or apparent partnership with UR, in a symbiotic relationship from which both benefit.

58. Each of the Doe Defendants is liable for the acts of trademark infringement directly engaged in by UR on their respective premises or for their benefit.

## **DAMAGES**

59. The Defendants' unauthorized use of the Slep-Tone's trademarks has damaged Slep-Tone.

60. Defendant UR has damaged Slep-Tone in an amount to be proven at trial but not less than $25,000 for each karaoke system it owns or operates and which contains karaoke tracks that infringe the Sound Choice Marks as detailed above, based upon its foregone purchases of original media.

61. Defendant UR has also enjoyed years of revenues attributable in substantial part to their use of counterfeit SOUND CHOICE-branded karaoke tracks to provide karaoke services for money.

62. UR's illicit activities have also allowed it to compete unfairly against Slep-Tone's legitimate customers by lowering its cost of doing business through piracy of the music materials it uses.

63. Those illicit activities exerted illegitimate and unfair pressure upon the market for karaoke services in the areas in which UR operates by helping to crowd higher-cost but legitimate operators out of the market.

64. The Doe Defendants have each damaged Slep-Tone in an amount to be proven at trial but not less than $50,000 for each venue at which the infringing services were provided.

65. The Doe Defendants have also benefited from higher-than-warranted profit margins based upon their use of UR to provide karaoke services in lieu of using a fully legitimate operator who must charge a higher price to offset the cost of legally acquiring music.

66. The Defendants' acts deprived Slep-Tone of revenue by discouraging

legitimate operators from investing in legitimate SOUND CHOICE-branded products.

## FIRST CLAIM FOR RELIEF
## TRADEMARK AND/OR TRADE DRESS INFRINGEMENT
### (Against UR)

67. Defendant UR used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

68. UR's use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

69. Slep-Tone did not license UR to manufacture or acquire reproductions, counterfeits, or copies of, or to use, the Sound Choice Marks in connection with the provision of its services.

70. UR's use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive its customers and patrons into believing that its services are being provided with the authorization of Slep-Tone and that its music libraries contain bona fide Sound Choice accompaniment tracks.

71. UR's acts were willful, knowing, and intentional.

72. Slep-Tone has been damaged by UR's infringing activities.

73. Unless enjoined by the Court, UR's infringing activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF
## TRADEMARK AND/OR TRADE DRESS INFRINGEMENT
### (Against the Doe Defendants)

74. The Doe Defendants knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services by UR at their respective establishments.

75. The Doe Defendants' infringing activities involving the use of the Sound Choice Marks were "in commerce" within the meaning of the Trademark Act of 1946 as amended.

76. Slep-Tone did not license any of the Doe Defendants to use or to authorize the use of the Sound Choice Marks in connection with the provision of karaoke services at their respective establishments.

77. The Doe Defendants' unauthorized use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive their customers into believing that their services are being provided with the authorization of Slep-Tone and that the music libraries in use at their establishments contain bona fide Sound Choice accompaniment tracks.

78. The Doe Defendants' acts were willful and knowing based upon their foreknowledge of UR's infringement coupled with their continuing to permit that infringement to occur on their premises.

79. Slep-Tone has been damaged by the Doe Defendants' infringing activities.

80. Unless enjoined by the Court, those infringing activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

## THIRD CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
### (Against All Defendants)

81. On each occasion when they caused or permitted a Slep-Tone accompaniment track to be played during a karaoke show at a given establishment,

the Sound Choice Marks were displayed in connection with the Defendants' karaoke services.

82. The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that Slep-Tone manufactured the karaoke accompaniment tracks in use at the establishment or otherwise sponsored or approved the Defendants' services and commercial activities.

83. The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by Slep-Tone and purchased or otherwise licensed by the Defendants.

84. The Defendants' use of Slep-Tone's marks in this fashion or in a more appropriate fashion would have inured to the benefit of Slep-Tone if the Defendants had legitimately acquired bona fide original media instead of counterfeiting them or acquiring counterfeit copies, in that Slep-Tone would have received revenue from such sales.

85. Because Slep-Tone has been denied this revenue, it has been damaged by the Defendants' uses.

86. On each occasion when they caused an accompaniment track pirated from a manufacturer other than Slep-Tone to be played, or permitted such a track to be played, during a karaoke show, the words, names, and symbols of the other manufacturer were displayed in connection with the Defendants' karaoke services.

87. Upon information and belief, the Defendants' use of those words, names, and symbols falsely designates the other manufacturer as the origin of the pirated track, when in fact the pirated copy was made or acquired by UR.

88. The display of these false designations of origin is likely to cause

confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that the Defendants acquired in a legitimate manner.

89. The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by those manufacturers and purchased by the Defendants.

90. The Defendants' use of the false designations of origin in this fashion damages Slep-Tone by enabling the Defendants to provide or obtain karaoke services at a lower cost than persons who acquire those materials legitimately, including Slep-Tone's legitimate customers, can provide or obtain them.

91. The consequential denial of revenue from a legitimate market for Slep-Tone's customers' services prevents Slep-Tone's customers from making purchases of material from Slep-Tone and is thus a denial of revenue to Slep-Tone.

92. Because Slep-Tone has been denied this revenue, it has been damaged by the Defendants' false designations of origin relating to other manufacturers.

93. Unless enjoined by the Court, the Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to Slep-Tone.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Slep-Tone prays for judgment against each of the Defendants, and that the Court:

A. Find that each of the Defendants has committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks;

B. Find that each of the Defendants has engaged in unfair competition detrimental to Slep-Tone in violation of 15 U.S.C. § 1125(a);

C. Enter judgment against each of the Defendants and in favor of Slep-Tone on all applicable counts;

D. Find the that Defendants' activities were in all respects conducted willfully and for profit;

E. Award to Slep-Tone the Defendants' profits and the damages sustained by Slep-Tone because of the Defendants' conduct in infringing the Sound Choice Marks, the Sound Choice Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting, and in any event in an amount not less than $25,000 for each karaoke system operated by UR, and not less than $50,000 for each establishment in which the infringement occurred;

F. Award to Slep-Tone the Defendants' profits and the damages sustained by Slep-Tone because of the Defendants' acts of unfair competition under 15 U.S.C. § 1125(a), jointly and severally based upon the partnered and collusive conduct of the Defendants;

G. Award to Slep-Tone treble, punitive, or otherwise enhanced damages, as available, for the Defendants' acts of willful infringement;

H. Order all computer disks, drives, or other media belonging to any of the Defendants, which media contain counterfeits of Slep-Tone's marks, or of marks belonging to other manufacturers, to be delivered up for destruction;

I. Grant Slep-Tone preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks by the Defendants;

J. Grant Slep-Tone preliminary and permanent injunctive relief against further false designations of origin by the Defendants with respect to words, names, and symbols associated with other manufacturers;

K. Award Slep-Tone its costs of suit and attorney's fees, to the extent not awarded above; and

L.   Grant Slep-Tone such other and further relief as justice may require.

Respectfully submitted this the 30th day of April, 2013.

**HARRINGTON LAW, P.C.**

BY: /s/ James M. Harrington
James M. Harrington
5960 Fairview Road, Suite 400
Charlotte, NC 28210-3119
(704) 315-5800

Attorney for Plaintiff
SLEP-TONE ENTERTAINMENT
CORPORATION